UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:10-CV-00054-JHM

COUNTRYMARK COOPERATIVE, LLP                                                    PLAINTIFF

V.

PETER JOLLY, et. al.                                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants William H. DeLacey, Donna Jo Hornovich,

Mary Ann Delacey Lee, Betty Lou Coleman, Linda Sue Kunze and Charles DeLacey's (collectively

the "DeLacey Defendants") Motion for Default Judgment and/or Summary Judgment [DN 37].

Fully briefed, this matter is ripe for decision.[1]

## I. BACKGROUND

This is a declaratory interpleader action filed by Plaintiff Countrymark Cooperative LLP in

order to determine the proper payee for $4,405.07 being held by Plaintiff for the purchase of a single

tank of oil on August 27, 2009.  The Delacey Defendants are owners of approximately eighty-three

(83) acres located in Daviess County, Kentucky.  (Compl. ¶ 5.)  This property is subject to a 1938

mineral lease (the "DeLacey Lease") executed by the Delacey Defendants' predecessors in interest.

(See DeLacey Defs.' Mem. in Support of Mot. for Default J., Ex. A, 1938 Lease.)  The DeLacey

Lease provided for an original ten year term, to continue "thereafter as oil or gas, or either of them

is produced from said land by the lessee."  (Id.)  The Lease provides that the DeLacey's should

_____

[1] The briefing in this matter has been extensive in that Defendant Jolly submitted his
response to the DeLacey Defendants' motion for default and/or summary judgment [DN 56] and
then five days later submitted an additional response [DN 58], and then also submitted an
unsolicited sur-reply [DN 61].

retain 1/8 of the profits from the sale of oil as a royalty payment.  (Id.)

On July 15, 2003, the 7/8 working interest in the DeLacey Lease was assigned to the Aladdin Oil Corporation.  (Id., Ex. B, Aladdin Oil Assignment.)  Then on January 31, 2005, Aladdin Oil assigned its 7/8 working interest in the DeLacey Lease to Energy Capital, Inc.  (Id., Ex. C, Energy Capital Assignment.)        Both Aladdin Oil and Energy Capital were organized under the laws of Nevada (see Compl. ¶¶ 3-4), with each using the same operating address of 202 W.3d St., Suite #11 Owensboro, Ky.  (See Aladdin Oil Assignment, Energy Capital Assignment.)  Furthermore, the two companies shared the same President, Walter Fox, at the time of the January 31, 2005 assignment.[2]  (Id.)  On November 10, 2005, Energy Capital assigned 50% of its 80% working interest in the DeLacey Lease to Dale and Helen Thompson.  (See Delacey Defs.' Third Party Compl. ¶ 2.)  According to Defendant Peter Jolly, the Thompsons then assigned their interest in the DeLacey Lease to Defendant Jolly on March 15, 2008.  (See Def. Jolly's Resp. to Delacey Defs.' Mot. for Default J. [DN 56], Ex. 1, Jolly Assignment.)  This assignment, although executed in 2008, is the only assignment discussed above that has not been recorded with the Daviess County Clerk. (See id.; Def. Jolly's Reply to Delacey Defs. Most Recent Resp. to Def. Jolly Objecting to and Deny the Mot. of Def. Delacey's Default and/or Summ. J. 4 [DN 61].)

The $4,405.07 that is at issue in this case is the remainder of the proceeds, after the Defendant Delacey's 1/8 royalty payment. (Compl. ¶¶ 9-10.)  There are essentially three competing claims to these proceeds.  The first is from the DeLacey Defendants who contend that, although they

---

[2] Both of these companies appear to now be defunct, as their charters have been revoked by the state of Nevada.  (See DeLacey Defs.' Mem. in Support of Mot. for Default J. and/or Summ. J. [DN 38], Ex. D, Revocation of Corporate Charter of Energy Capital; Ex. G, Revocation of Corporate Charter of Aladdin Oil Corporation.)

have already received their 1/8 royalty share, they are entitled to the remainder because the DeLacey Lease is void from lack of production and Energy Capital's breach of its assignment.  Defendant Jolly contends that the money belongs to Energy Capital and that Energy Capital owes him at least $4,400 for work he completed as a contractor and consultant for the corporation.  The reason that Defendant Jolly does not make a direct claim for the money is due to the nature of the third competing claim for the proceeds made by Defendant United States.  Defendant United States contends that it is entitled to the proceeds because it has an outstanding garnishment order against Defendant Jolly as well as Energy Capital.  (See Def. United States' Resp. to Def. Jolly's Mot. to Dismiss 4.)  The garnishment order is the result of a $500,000 judgment entered against Defendant Jolly and in favor of the United States in a case filed in the Western District of Kentucky styled United States v. JAF Oil Company, Inc., 4:95-cv-169-M.

Along with the declaratory action filed by Plaintiff Countrymark, the DeLacey Defendants have filed a Cross-Claim against Defendants Energy Capital, Aladdin Oil, and Jolly seeking to have the Delacey Lease declared void.  The DeLacey Defendants have also filed a Third-Party Complaint against Third-Party Defendants Dale and Helen Thompson to have their interest in the DeLacey Lease, whatever it may be, voided.  It is the DeLacey Defendants' claims to declare the lease void that are before the Court on motions for default and/or summary judgment.

## II. DISCUSSION

### A. Aladdin Oil, Energy Capital, Dale and Helen Thompson

DeLacey Defendants contend that a default judgment should be entered against Aladdin Oil, Energy Capital, and Dale and Helen Thompson due to each party's failure to file a responsive pleading or defend in any way against the DeLacey Defendants' Cross-Claim and Third-Party

Complaint.  (See DeLacey Defs.' Mot. for Default J. [DN 37]; Delacey Defs.' Resp. to Def. Jolly's Obj. [DN 59] (including the Thompsons in their request for default judgment).)  Federal Rule of Civil Procedure 55 provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

The Federal Rules of Civil Procedure do not specifically provide for service of process through a warning order attorney.  However, Rule 4(e)(1) provides that service may be effected in accordance with the laws of the state where the federal judicial district is located.  Fed. R. Civ. P. 4(e)(1).  In Kentucky, a corporation "which is subject to suit under a common name, having no agent in this state known to the plaintiff upon whom a summons may be lawfully served," may be served through the appointment of a warning order attorney.  See Ky. R. Civ. P. 4.05, 4.06, 4.07.

This Court found that Aladdin Oil and Energy Capital were properly served under Kentucky Law for purposes of Plaintiff's interpleader Complaint.  (See Order dated Dec. 27, 2010 [DN 20].) On September 15, 2011, the Magistrate Judge appointed a warning order attorney to serve Aladdin Oil and Energy Capital with the DeLacey Defendants' Answer and Cross-Claim. (Order dated Sept. 15, 2011 [DN 44].)  The September 15, 2011 Order states that the warning order attorney is to undertake diligent efforts to serve Defendants Aladdin Oil and Capital Energy.  (Id.)  The Order further states that if Defendants Aladdin Oil and Energy Capital do not appear and defend within fifty (50) days from the date of the Warning Order, that they risk having a judgment entered against them in favor of the DeLacey Defendants.  (Id.)

For reasons unknown to the Court, the warning order attorney was unaware of his appointment, and did not receive notice of the appointment until December 13, 2011. (See Warning

4

Order Attorney Report [DN 60].)  Nevertheless, on December 16, 2011, the warning order attorney sent correspondence to several addresses in an attempt to effect service of process on Aladdin Oil and Energy Capital.  (Id.)  The correspondence notified Aladdin Oil and Energy Capital of the DeLacey Defendants' pending claims as well the need to respond within fifty days from December 15, 2011.  (See id., Ex. A.) The warning order attorney filed his report on February 3, 2012, wherein he detailed his diligent efforts to contact the two Defendants.  (See Warning Order Attorney Report.)  At the time of the filing of his report, the warning order attorney had not received any correspondence from either Aladdin Oil or Energy Capital.[3]  (Id.)

Notwithstanding the delay in the administration of the Warning Order, the Court finds that Defendants Aladdin Oil and Energy Capital have both been constructively summoned in accordance with the Kentucky Rules of Civil Procedure, as permitted by Fed. R. Civ. P. 4(e)(1).  The Warning Order that was mailed to Defendants Aladdin Oil and Energy Capital clearly states that the Defendants have fifty (50) days from December 15, 2011, to appear and defend against the DeLacey Defendants' Cross-Claim.  That time has come and gone and neither Aladdin Oil nor Energy Capital have appeared or filed any pleadings with this Court.  Therefore, pursuant to Fed. R. Civ. P. 55, the DeLacey Defendants are entitled to an entry of default judgment against Defendant Aladdin Oil Corporation and Defendant Energy Capital, Inc., as to all claims contained in the DeLacey Defendants' Cross-Claim.

---

[3] The only communication that the warning order attorney received was the result of the mailing of the DeLacey Defendants' Answer and Cross-Claim to Energy Capital, Inc., c/o Peter Jolly, P.O. Box 23232, Owensboro, KY 42301.  On January 13, 2012, Defendant Jolly contacted the warning order attorney's office and indicated that he received the mailing and "would be sending 'something by mail.'" (Warning Order Attorney Report [DN 60].)  However, to date, the warning order attorney has received nothing further from Defendant Jolly.

The DeLacey Defendants also seek a default judgment against Defendants Dale and Helen Thompson. During the telephonic status conference conducted on August 8, 2011, Defendant Jolly disclosed to the Court as well as the other parties that the Thompsons had received a partial assignment of the working interest in the DeLacey Lease. (See Order dated Aug. 9, 2011 [DN 40].) Thereafter, the DeLacey Defendants filed a Third-Party Complaint against the Thompsons, asserting the same claims as those alleged in the DeLacey Defendants' Cross-Claim, namely that the DeLacey Lease was no longer valid. (See Third-Party Compl.) Both Dale and Helen Thompson waived service in accordance with Fed. R. Civ. P. 4(d), and their Answer to the Third-Party Complaint was due on December 5, 2011. (See Waiver of Service [DN 47] and [DN 49].) To date, the Thompsons have failed to file a responsive pleading or defend against the current action. Therefore, pursuant to Fed. R. Civ. P. 55, the DeLacey Defendants are entitled to an entry of default judgment against Third-Party Defendants Dale Thompson and Helen Thompson as to all claims contained in the Third-Party Complaint.

**B. Defendant Jolly**

The DeLacey Defendants have also filed for summary judgment against Defendant Jolly on their Cross-Claim that the DeLacey Lease is void. Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

The DeLacey Defendants' motion for summary judgment relies upon a singular argument: at the time the DeLacey Defendants filed their motion, Defendant Jolly had disclaimed any personal interest in the DeLacey Lease and, therefore, he did not have standing to argue its validity. (See DeLacey Defs.' Mem. in Support for Default J. and/or Summ. J. 3.) However, after declaring for nearly twenty-one months that he had no interest in the DeLacey Lease, Defendant Jolly responded to the DeLacey Defendants' motion with the statement that "I originally stated I could not speak for Energy Capital or any other interest owner in the Delacey Lease, I am know [sic] stating I have acquired a 40% ownership in the Delacey oil lease from Dale and Helen Thompson which does allow me to represent my ownership interest in the Delacey lease in this litigation." (See Def. Jolly's Resp. to DeLacey Defs.' Mot. for Default J. and/or Summ. J. 2 [DN 56].) Attached to Defendant Jolly's Response is an assignment from the Thompsons for 50% of 80% of the working interest in the DeLacey Lease. (See id.) The assignment is dated March 15, 2008, over two years

before this action was instituted, and it has never been recorded.

In their Reply, the DeLacey Defendants cry foul at this eleventh hour production after Defendant Jolly's continued and emphatic statements that he had no interest in the DeLacey Lease. (See DeLacey Defs.' Resp. to Obj. [DN 59]  The DeLacey Defendants request that the Court "not reward Mr. Jolly's obvious effort to avoid the lien of the government through his continued misrepresentations to this court."  (Id. at 5.)

Notwithstanding his new claim to own a 40% working interest in the DeLacey Lease by virtue of an assignment dated March 15, 2008, Defendant Jolly inexplicably continues to argue that he should not be directly paid any proceeds by the Plaintiff.

> "Defendant Jolly has continued to state he is **not the owner** of said company Energy Capital, nor has he requested to be paid any funds Plaintiff has deposited with this court.  Energy Capital owns the funds and Plaintiff should pay funds to Energy Capital.  Energy Capital is in debt to Defendant Jolly for expenses for equipment he paid for and work done as well as consultant/management services on the Delacey lease which is owned by Energy Capital, Plaintiff does not owe any funds to Defendant Jolly directly."

(Id. at 4 (emphasis in original).)  In his unsolicited sur-reply, Defendant Jolly contends that "[t]he evidence filed to date leaves no doubt that said funds shall be paid to Energy Capital a 60% owner of the mineral rights and Dale and Helen Thompson a 40% owner of the mineral interest in the Delacey lease."  (Def. Jolly's Sur-Reply 1 [DN 61].)  Defendant Jolly argues that he only "has an interest in the funds to the point that once funds are paid to the mineral owners, they are to pay Defendant Jolly funds due him, maybe."  (Id. at 3.)

It appears that Defendant Jolly is speaking out of both sides of his mouth.  On the one hand, he seeks to avoid the government's lien by stating he has no ownership in the lease.  On the other, he seeks to establish standing to litigate the validity of the lease by stating he has an ownership

interest in the lease.  Based on the current record, the Court cannot determine which it is, but it seems clear that it cannot be both.

Defendant Jolly's reward, as the DeLacey Defendants call it, is to avoid summary judgment at this time.  He will have a further opportunity to explain how it is that he can be a working interest owner in a lease and not be entitled to any of the oil production.  In an effort to explain his previous statements which entirely contradict his current position, Defendant Jolly proffers the following excuse:

> Defendant Jolly has not misled the court at any time in statements of ownership in Energy Capital or the mineral rights to the Delacey Oil lease. . . .
> In reference to the previous statement to the court, I stated what I knew at the time as it was the truth.  I was not aware I still had an oil lease document from 2008 and was only discovered a short time ago. . . . It was only after I met with an attorney that we realized that the oil lease of 2008 was a valid assignment and gave me ownership in the Delacey lease.

(Def. Jolly's sur-reply 4-5.)  Defendant Jolly, who proclaims to be an expert in the field of oil and gas, with over 35 years of experience in preparing oil documents, would have the Court believe that he was completely unaware that this 2008 assignment from the Thompsons was a valid assignment until after he had consulted an attorney.  This proposition may need further explanation.

A letter from Defendant Jolly to the Thompsons dated March 14, 2008 (the day before the Thompsons executed the assignment to Defendant Jolly) raises additional questions.[4]  In this letter, Defendant Jolly informs the Thompsons that he has secured a potential buyer for the DeLacey Lease, but that he needs to have the assignment "ready to transfer when the funds are deposited."  (See

---

[4] While this document was filed in United States v. JAF Oil Co., Inc., 4:95-cv-00169, it was referenced in the Defendant United States Final Order of Garnishment filed in the instant case.  (See Def. United States' Notice of Filing, Ex. A Final Order of Garnishment 3 [DN 62].)  As this document is a matter of public record and was specifically referenced in a filing in the current action, the Court finds that it is appropriate to address it in the current matter.

United States v. JAF Oil Co., Inc., 4:95-cv-00169, Proposed Order *For Clerks Signature*, Ex. B, Letter dated March 14, 2008 [DN 242].)  It is clear from the record that no sale of the DeLacey Lease occurred after March 2008.  Was the assignment not recorded because the sale never occurred? Was the assignment intended to be valid without such a sale? Did the Thompsons receive any consideration for the assignment?

These questions and others need to be resolved before the Court can determine whether Defendant Jolly has any interest in the DeLacey Lease so as to give him standing to litigate the validity of the lease.  **Therefore, the Court will conduct an evidentiary hearing on Wednesday, May 16, 2012, at 9:00 am, prevailing time, at the United States Courthouse in Owensboro, Kentucky.**  Defendant Jolly shall appear at the hearing and be prepared to give sworn testimony concerning his interest, or lack thereof, in the DeLacey Lease.  He shall be subject to cross-examination. Defendant Jolly may offer other testimony and evidence on the question.  The other parties may likewise offer testimony and evidence on the question.  The Court will not receive evidence at the hearing relating to whether the DeLacey Lease has expired by non-production or otherwise.  Instead, the hearing will be limited to determining Defendant Jolly's interest in the DeLacey Lease.

**Defendant Jolly is warned that his failure to appear at the hearing will be deemed as an abandonment of any claimed interest in the DeLacey Lease as it relates to his standing to litigate the validity of the lease.  In that event, judgment will be entered in favor of the DeLacey Defendants and the lease will be declared void.**  Therefore, it is imperative that Defendant Jolly appear.  The hearing has been scheduled for a date two months from now in an effort to accommodate all schedules.  Any requests for a different date shall be made on or before

10

March 30, 2012.

## III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants William H. DeLacey, Donna Jo Hornovich, Mary Ann Delacey Lee, Betty Lou Coleman, Linda Sue Kunze and Charles DeLacey's (collectively the "DeLacey Defendants") Motion for Default Judgment and/or Summary Judgment [DN 37] is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED IN PART** as to the default judgments against Defendant Aladdin Oil Corporation, Energy Capital, Inc., and Dale and Helen Thompson.

It is **DENIED IN PART** as to summary judgment against Defendant Peter Jolly.

It is **FURTHER ORDERED** that an evidentiary hearing is scheduled for **Wednesday, May 16, 2012, at 9:00 am, prevailing time, at the United States Courthouse in Owensboro, Kentucky.**

cc: counsel of record
    Peter Jolly, pro se

11